# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | Case No: 2:24-cr-65 |
| Plaintiff, : | |
| : | |
| vs. : | JUDGE WATSON |
| : | |
| JOSE LOPEZ-CABRERA, : | |
| : | |
| Defendant. : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Now comes the United States of America, by and through undersigned counsel, and hereby submits its Memorandum in aid of sentencing.

**I.     BACKGROUND**

On May 21, 2025, Defendant Jose Lopez-Cabrera entered a plea of guilty pursuant to a Rule 11(c)(1)(A) plea agreement, to Count One of the Indictment filed in this case, which charged him with conspiracy to distribute and possess with intent to distribute a mixture or substance containing a detectable amount of four controlled substances: fentanyl, methamphetamine, heroin, and cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C). The plea agreement contained an attachment, which detailed the factual statement of Defendant's offense conduct in support of his guilty plea. The plea agreement also contained the parties' agreement to a base offense level of 30, a two-level decrease pursuant to application of the safety valve (if all of the requirements were met at the time of sentencing), a two-level decrease for being a zero-point offender (if applicable), and a three-level reduction for acceptance of responsibility.

1

The Probation Officer released the final Presentence Investigation Report ("PSR") and sentencing in this matter is scheduled for January 14, 2026.

## II. PRESENTENCE INVESTIGATION REPORT AND OUTSTANDING OBJECTIONS

The United States has reviewed the PSR. The Probation Office calculated a base offense level of 32, applied a two-level reduction for zero-point offender status, and subtracted three levels for acceptance of responsibility, resulting in a total offense level of 27. At a criminal history category I, the resulting guidelines range is 70 to 87 months. In addition, the guidelines range for a term of supervised release is three years, per U.S.S.G. § 5D1.2(c). Defendant raises three objections to the final PSR. The Government joins in the first and opposes the other two.

First, the Government joins in Defendant's objection that the base offense level should be 30. In crafting a resolution in this case, the parties diligently worked to come up with a base offense level that both sides believe fairly represented Defendant's drug trafficking conduct during the period charged, which resulted in a base offense level 30. The United States intends to honor the plea agreement.

Second, Defendant objects to the Probation Officer's decision not to apply a two-level reduction under U.S.S.G. §§ 2D1.1(b)(18) and 5C1.2, otherwise known as the safety valve reduction.[1] The Government does not dispute that Defendant satisfies the first four criteria under U.S.S.G. § 5C1.2. The pending objection focuses on the fifth criterion, which states that "not later than the time of the sentencing hearing," a defendant must "truthfully provide[] to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan[.]" U.S.S.G.

---

[1] Because no mandatory minimum was charged, 18 U.S.C. § 3553(f) is not implicated here.

§ 5C1.2(a)(5). The asserted basis for Defendant's objection is inconsistent with the record in this case, and it should therefore be overruled.

As the party seeking a downward departure, Defendant "has the burden of proving by a preponderance of the evidence that he is entitled to the 'safety valve' reduction." *United States v. Salgado*, 250 F.3d 438, 459 (6th Cir. 2001); *United States v. Rankin*, 1 F. App'x 389, 395 (6th Cir. 2001) ("To qualify for a reduced sentence under the safety valve statute . . . the defendant must prove by a preponderance of the evidence that [he] meets each of the five criteria spelled out in the statute."). Defendant cannot satisfy his burden simply by insisting that he provided all information he had knowledge of to the government. Instead, U.S.S.G. § 5C1.2 "clearly require[s] an affirmative act by the defendant truthfully disclosing all the information he possesses that concerns his offense or related offenses." *United States v. Adu*, 82 F.3d 119, 124 (6th Cir. 1996); *see also United States v. Dottery*, 259 F. App'x 812, 818 (6th Cir. 2008) ("True cooperation is not merely answering the questions the government thinks to ask, but assertively volunteering all relevant information about one's offense or related offenses."). To qualify for relief under U.S.S.G. § 5C1.2, a defendant "must truthfully provide all information he has concerning the offense of conviction and all relevant conduct." *Adu*, 82 F.3d at 124; *see United States v. Maduka*, 104 F.3d 891, 893 (6th Cir. 1997) (explaining that the phrase "offense or offenses that were part of the same course of conduct or of a common scheme or plan" is defined as "the offense of conviction and all relevant conduct").

Defendant's objection is premised on his assertion that he provided an interview to law enforcement on the date of his arrest. The issue with that interview was that it was both incomplete and largely untruthful. During that that interview, Defendant stated he got involved in drug trafficking because people know him. He identified the person he was involved with as

"Juan Velasquez" and that they were in communication via text message. He also identified another person involved as Hector. Initially, Defendant claimed he was not receiving any drugs; that Hector was at his house two weeks before his arrest and stayed at his house for a couple nights. He stated that Hector left a bag of drugs at his house and told him to take care of it. And that he tried not to be involved but they forced him too. When asked how many times he was involved with Juan in getting drugs and distributing them, he originally claimed it was the one time—referring to the time drugs were left at his house. And that he never received money from anyone. Eventually, Defendant acknowledged that he had been receiving drugs for two years from Juan shipped straight to his house via USPS but that he only received drugs two (or maybe three) times. When asked how much he was paid for his involvement, he stated he did not get paid because he did not do anything. When asked how he got money back to Juan, he adamantly denied that he sent drug money anywhere. Defendant stated the only person he was sending money to in Mexico was his girlfriend in increments of $70 and $120. He stated that he threw away a box he believed was drugs two years prior from Juan. Defendant told law enforcement that he believed one of the boxes was supposed to be fentanyl, heroin, and/or methamphetamine. When asked if ever gave drugs to anyone else that he got from Juan, he stated that he never did.

  The information Defendant provided during his post-arrest interview is inconsistent with the evidence in this case, let alone the Statement of Facts that Defendant has now signed and attested to as true in open court. If Defendant can come in and say whatever he wants, whether it is truthful or not, and regardless of whether it is the full truth or not, and still qualify for safety valve, then the fifth criteria for safety valve is superfluous. That's clearly not the law. "Congress intended the [safety-valve] provision to benefit only those defendants who truly cooperate." *United States v. Pena*, 598 F.3d 289, 292 (6th Cir. 2010) (internal quotations omitted). The

Government has offered Defendant additional opportunities to sit down with law enforcement to truthfully provide information about the offense he was involved in, and Defendant has not taken advantage of such opportunities. Defendant does not qualify for safety valve.

Finally, Defendant objects to the Probation Officer's decision not to apply a mitigating role reduction under U.S.S.G. § 3B1.2. Under U.S.S.G. § 3B1.2, if a defendant is a minor or minimal participant in a criminal activity, he is entitled to a two to four-level reduction from his offense level. The determination is heavily fact-dependent and based on the totality of the circumstances. *Id.* cmt. n.3(C). Pursuant to the guidelines, courts should consider the following non-exhaustive list of factors in determining whether a mitigating role reduction is warranted:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity; (ii) the degree to which the defendant participated in planning or organizing the criminal activity; (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing the acts; (v) the degree to which the defendant stood to benefit from the criminal activity.

*Id.*

Additionally, since the issuance of the final PSR, the November 2025 guideline amendments have specifically delineated circumstances to consider in determining whether a two or four-level minor role adjustment is warranted in the drug trafficking context. Specifically, a four-level reduction "is generally warranted if the defendant's primary function in the offense was plainly among the lowest level of drug trafficking functions such as serving as a courier, running errands, sending or receiving phone calls or messages, or acting as a lookout." *Id.* § 2D1.1(e)(2)(B)(i). A two-level reduction "is generally warranted if the defendant's primary function in the offense was performing another low-level trafficking function, such as

5

distributing controlled substances in user-level quantities for little to no monetary compensation or with a primary motivation other than profit." *Id.* § 2D1.1(e)(2)(B)(ii). The defendant bears the burden of demonstrating his minor role by a preponderance of the evidence. *United States v. Mosley*, 53 F.4th 947, 963 (6th Cir. 2022). As the Sixth Circuit has explained, "[a] defendant does not become a minor participant simply because others planned a scheme and made all the arrangements for its accomplishment." *United States v. Miller,* 56 F.3d 719, 721 (6th Cir. 1995).

The Government agrees that Defendant was not a leader or organizer of the criminal activity in this case. And while he may not have understood the inner workings of his supplier's drug organization that he was working for, he understood the scope and structure of the criminal activity: that he was to pick up bulk quantities of narcotics, break the narcotics down, provide the narcotics to local drug dealers, collect the drug proceeds, and wire the money back to the Mexico. Additionally, a forensic review of Defendant's Facebook account provided that he was setting up narcotics sales with at least one individual himself, Jose Edgar Ponciano Pena ("Edgar"), which was not coordinated through his supplier. In that way, he did exercise a degree of decision-making authority or influence over his drug trafficking activities. Here, the parties also limited Defendant's relevant conduct to the drugs he was directly connected to receiving as part of the conspiracy. *See United States v. Corrales*, No. 21-6046, 2022 WL 7386925, at *4 (6th Cir. Oct. 13, 2022) (explaining that it is still "relevant to the minor-role reduction that a defendant has been held responsible only for the defendant's own conduct and not for any broader scheme of distribution."). The United States agrees with Probation that a mitigating role adjustment is not warranted.

Should the court sustain the parties' joint objection and overrule Defendant's other two objections, the total offense level would be 25. At a criminal history category I, that results in a

guidelines range of 57 to 71 months.

### III. SENTENCING FRAMEWORK

After *Booker v. United States*, 543 U.S. 220 (2005), district courts are to engage in a three-step sentencing procedure. Courts are first to determine the applicable guidelines range and then consider the applicable guidelines range—along with all of the factors listed in 18 U.S.C. § 3553(a)—to determine what sentence to impose. *Gall v. United States*, 552 U.S. 38, 49–50 (2007); *Rita v. United States*, 551 U.S. 338, 351 (2007). The central command to district courts in imposing a sentence is to fashion one that is sufficient, but not greater than necessary, to meet the goals set forth in 18 U.S.C. § 3553(a).

Section 3553(a) further delineates seven factors the Court must consider in fashioning an appropriate sentence: (1) the nature and circumstances of the offense/history and characteristics of the defendant; (2) the statutory purposes of sentencing; (3) the kinds of sentences available; (4) the kinds of sentences and sentencing ranges as set forth in the Sentencing Guidelines; (5) Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

### IV. ANALYSIS AND RECOMMENDATION OF THE UNITED STATES

As noted above, there are seven factors the Court is to consider during sentencing, pursuant to 18 U.S.C. § 3553(a). The Government submits that while the Court should consider each of the above factors, the following facts are highly pertinent to the Court's consideration of the nature and circumstances of the offense, as well as the history and characteristics of the defendant.

The nature and circumstances of the offense are described in detail in both the PSR at ¶¶

8 to 23 and Attachment A of the plea agreement. In short, between at least November 2022 and December 2023, Defendant conspired with other individuals to distribute large quantities of narcotics in central Ohio, to include fentanyl, methamphetamine, heroin, and cocaine. Defendant retrieved the narcotics that had been sent through the mail to various addresses, repackaged the drugs and provided them to mid-level distributors in Columbus, and then wired the money back to Mexico or directly to his supplier. While he was primarily instructed by his supplier on who to provide the drugs to and at what price, on occasion he was also tasked with trying to find buyers for the dope. (PSR, ¶ 15.) For example, between June and August 2023, Defendant coordinated directly with someone named "Edgar" for the sale of both cocaine and marijuana. Upon his arrest, Defendant admitted to law enforcement that he was involved in drug trafficking for approximately two years.

Defendant is 66 years old. He was born in Michoacan, Mexico and first immigrated to the United States in 1975. Thereafter he lived in California, Mexico, Tennessee, (Columbus) Ohio, and Arizona before ultimately returning to Columbus in 2010. Defendant became a naturalized United States citizen in 2022, and he currently resides in Mansfield. He recalls a traumatic childhood filled with abuse and neglect by those closest to him. Defendant married his wife in 1984, and they have three adult children together, two of whom they reside with. He acknowledged that they have experienced marital problems over the years due to Defendant's infidelity, as well as his alcohol and drug abuse. Defendant also has four adult children from a prior relationship; he has occasional contact with two of them. He reports suffering a stroke in 2010 and currently suffers from high cholesterol, diabetes, arthritis, and polyps. According to Defendant's family, he continues to abuse alcohol, and he suffers from mental health issues, both of which he is undergoing treatment to address. Defendant also reported abusing cocaine and

methamphetamine up through the time of his arrest. He completed the equivalent of second grade in Mexico. Defendant currently works for DM Pallet Services and has held jobs in the past doing item resale, landscaping, and working as a musician.

Despite Defendant's age and relative lack of criminal history (aside from his record of serious alcohol-related driving convictions) he played a pivotal role in the charged conspiracy in getting his supplier, Roman Vazquez-Ochoa's, drugs to Columbus, distributed to local dealers, and the money back to the source of supply. While Vazquez-Ochoa may have coordinated with local traffickers on prices, amounts, and timing, the rest was handled by Defendant. The motivation for Defendant's criminal behavior here is relatively perplexing given that by Defendant's own admission (and corroborated by law enforcement surveillance) he is working the same job now that he had during the conspiracy. He's also a naturalized citizen with no fear of deportation back to Mexico, where this activity (and those in charge of said activity) undoubtedly stemmed from. The United States tends to agree with his daughter, that Defendant surrounds himself with poor influences, and whether he likes it or not, Defendant needs to be held accountable for his actions in helping funnel dangerous narcotics into central Ohio.

Consideration of the most relevant sentencing factors warrants a sentence near the bottom of the guidelines range. Such a sentence would properly consider the nature and circumstances of Defendant's offense conduct. Such a sentence would also take into consideration Defendant's particular history and characteristics, including his limited criminal history. A sentence at the bottom of the guidelines range would serve to protect the public from future crimes of Defendant and may serve to prevent him and others from committing similar crimes in the future.

## V. CONCLUSION

For all of the foregoing reasons, the United States respectfully submits that a term of imprisonment near the bottom of the guidelines range of 57 months, followed by a three-year term of supervised release, would be sufficient but not greater than necessary to achieve the statutory goals of sentencing.

Respectfully submitted,

DOMINICK S. GERACE II
United States Attorney

*s/ Nicole Pakiz*
NICOLE PAKIZ (0096242)
JENNIFER M. RAUSCH (0075138)
Assistant United States Attorneys
303 Marconi Boulevard, Suite 200
Columbus, Ohio 43215
(614) 469-5715
Fax: (614) 469-5653
Nicole.Pakiz@usdoj.gov
Jennifer.Rausch@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of January 2026, a copy of the foregoing Government's Sentencing Memorandum was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*s/ Nicole Pakiz*
NICOLE PAKIZ (0096242)
Assistant United States Attorney